The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D'Armond presiding. Morning, counsel. Morning. Our first case today is 4-20-0385 Murphy-Wells-Wells v. Green. Could counsel for the appellant please state your name for the record? Michael Meyer. Morning, Mr. Meyer. Counsel for the appellate, could you please state your name for the record? Ed Graham, your honor. Thank you. Good morning. Counsel, you may proceed. Thank you. May it please the court, counsel. My name is Michael Meyer and I represent the appellant, Blackburn and Green. The issue presented today involves the application of the Relation Back Doctrine in the case of a mistaken identity and, more specifically, the timely notice requirement under Section 2-616D of the Code of Civil Procedure. We're asking this court to reverse the trial court's entry of summary judgment in favor of the appellee, Kenneth Wells and Sons Inc., whom I'll refer to as KWS, because, at the very least, there is a question of fact concerning the timeliness of KWS's notice of the commencement of this lawsuit based on testimony from KWS's employee that she personally notified KWS of the lawsuit before KWS itself was sued. Thus, the trial court erred in finding that there was no testimony or evidence that the employee had notified KWS of the suit and erred in ruling as a matter of law that KWS did not have notice of the commencement of the lawsuit within the time period required for the application of the Relation Back Doctrine under Section 2-616D. Briefing by way of background, this case stems from a motor vehicle accident on June 21, 2014, involving Jessica Wells, who was employed by KWS at that time. Now, the other driver, Plaintiff Joshua Murphy, had retained Blackburn and Green and filed suit against Jessica and the entity mistakenly believed to have been her employer, and suit was filed on May 26, 2016. Now, the ensuing motion practice revealed that the wrong entity was named as Jessica's employer, and during her first discovery deposition on May 12, 2017, Jessica confirmed that she was employed by KWS on the date of the accident and testified that she personally notified KWS of the lawsuit. The complaint was amended later that month in May of 2017, but by then the applicable statute of limitations had expired. So, there's no dispute that this is a case of mistaken identity. The wrong entity was mistakenly named as the defendant in the original complaint. As a result, for the amended complaint against KWS to relate back to the original for purposes of the statute of limitations, the requirements of 2-616D must be met. Now, there is also no dispute that the first and third of those requirements of Section 2-616D are satisfied. First, the statute of limitations had not expired when the original action was filed, and as for the third requirement, it's satisfied because the amended pleading sets forth the cause of action that grew out of the same occurrence set forth on the original pleading, that occurrence being the accident.  Now, what is disputed is whether the second requirement, the timely notice requirement, is satisfied. That is, whether KWS received notice of the commencement of the lawsuit within the time that the action might have been brought, plus the time for service permitted under Supreme Court Rule 103B, so that it was not prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against KWS. Now, there are a few prongs within the timely notice requirement, and first I'd like to address KWS's notice of the commencement of the lawsuit itself, as that has been a primary focus of the briefs. Now, KWS argues that it was unaware of this lawsuit until it was served with the amended complaint in June of 2017, but in her first deposition in May of 2017, prior to KWS being expressly testified that she personally notified KWS that this lawsuit had been filed. She was asked, have you personally... KWS is basically her brother, right? Yes, Your Honor. Okay. Her brother is the owner and president of KWS. Now, during that deposition, she was asked, have you personally notified KWS that there was a lawsuit filed against you? She answered, yes. She was then asked, how was that handled or addressed with regard to you working at the time of the incident and KWS being involved as your employer in regards to this lawsuit? She responded, KWS itself really has not commented on anything to me, other than me just letting them know. Now, the trial court erred when it found that there was not any deposition testimony or evidence that Jessica communicated about the commencement of this lawsuit with KWS in light of this testimony. And while KWS acknowledges this testimony in the response, it tries to get around it by pointing to later conflicting testimony that Jessica gave during her second deposition over a year later on October 26th, 2018. Mr. Meyer, may I interrupt you for a moment? Let's go ahead and take then the evidence in the light most favorable to the non-movement here, your client. And we have Jessica's deposition testimony about having notified KWS of the filing of the lawsuit. Her deposition, you said was May the 12th of 2017, correct? Correct. Statute of limitations ran in this case, June 21st of 2016. Is that right? Correct. Almost a year prior. So going to 2616D part two, and this is the notice provision that you say is the crux. We've got the statute of limitation having already expired by the time of Jessica's deposition. So the only potential saving allowing relation back would be then the time for service permitted under 103B, correct?  In Jessica's deposition, and this is what I want you to hone in on, does she identify when it was that she told KWS of the filing of the lawsuit? No, she does not. So it could have been the week prior to the deposition, which would have been May of 2017, which still would have been close to 11 months after the expiration of the statute of limitations, correct? Yes, it could have been. Okay. So doesn't the inquiry then using best case scenario for you then center on the requirements of 103B and what is considered to be a timely service under 103B? Yes, your honor. And this is sort of where there's a bit of a problem in the language of rule two, I'm sorry, section 2616D in terms of identifying the time permitted for service under 103B. And that's because rule 103B doesn't specify an exact time period for service. Rather, it only requires the plaintiff be diligent in his efforts to obtain service. So in essence, the permissible period for service under 103B and thus under 2616D, it varies from case to case. It's measured essentially by the plaintiff's efforts and the plaintiff's diligence in each particular case as to service on each particular defendant. And the reason that creates a bit of an issue here in terms of case like this with mistaken identity is twofold. One, as cases have repeatedly held starting with the United States Supreme Court case in Krupsky versus, I'm sorry, got the last name mixed up there. But Krupsky, which has since been relied upon in various Illinois cases, including Zlata v. Millett, Borchers v. Franciscan, Maggi v. RAS development. The point there is that the plaintiff's diligence is not an issue in terms of amending the complaint and obtaining service. What matters for purpose of the Relation Back Doctrine is the defendant's knowledge of the lawsuit. And so the plaintiff's diligence is not an issue. And so when we're trying to measure a time based on plaintiff's diligence, yet simultaneously saying that the plaintiff's diligence doesn't matter under the case law, it's difficult to identify and assess in its precise time period. And that's further complicated by the very nature of a mistaken identity case in and of itself. If the plaintiff is unaware of the proper entity to be named as the defendant, it stands to reason that there aren't going to be efforts to serve the correct entity. That's why it's a mistaken identity case. And so if we're trying to measure this time based on the plaintiff's efforts to serve, it creates a problem there. And I think that there is some guidance here in terms of the close relationship between notice and prejudice. Let me ask you then, in terms of asserting the Relation Back Doctrine, isn't it the party that is asserting the application of the Relation Back Doctrine that would bear the burden of  Yes, Your Honor. Okay, so here, as best I can figure it, you have Jessica's deposition where she says in answer to a question that she did give KWS notice of the filing of the suit. It's just that there's no time frame identified and it could have been a week after the expiration of the statute of limitations. It could have been 11 months after the statute of limitation, but we're left to speculate as to when that was. And I noticed in your brief, this is at page 24, you say, while she did not indicate precisely when she notified KWS, it was at the very latest, within 11 months of the expiration of the statute of limitations, because she testified regarding the notice on May 12, 2017. In the event that she notified KWS shortly after being served with the original complaint herself, she may have notified KWS as soon as June 24, 2016, and so forth. But what it seems you're doing there is inviting speculation. We are missing what seems to me to be a key piece of evidence, which is when did she notify KWS? The mere fact that she did doesn't allow us to examine this according to 2616D, which is specifically telling us we have to examine whether or not the timeliness, whether it was timely under Rule 103B. And as the proponent, or as the party seeking application of the Relation Back Doctrine, it seems that that falls in your lap. Yes, Your Honor. To that point, I would say in terms of the time period, as I mentioned before, it's difficult to assess that. But I think we can find some guidance here in the language of the rule and the way that courts have interpreted this, which is that it's within the applicable time period that received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits. And I think that's why the fact that notice and prejudice are so intertwined here does provide guidance in a situation where we cannot take a measurable time period from Rule 103B referenced within there. But what we can look at is whether or not the defendant was prejudiced by this delay. And that's what the case law looks to. It's one of the inquiries as noted in the brief that is developed from this line of cases from Krupski, which is that whether the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend itself. Let's say that instead of potentially 11 months after, let's say that it's two years or three years or four years after, if we're just examining for prejudice, is that still permissible service under 103B, which again, is what we're, that's the rubric that we're given to judge timeliness of service here. In that hypothetical, perhaps it could be based upon the absence of any prejudice there, because again, it goes to what the defendant knew or should have known. And it tries to strike a balance between enforcing the statute of limitations, but fairness. And the fairness goes to both parties here in terms of whether the defendant knew or should have known that it should have been sued and perhaps thought that it had lucked out. And I think that the slot that the Miller case from the first district puts this fairly well is that if a party is aware of a lawsuit arising out of a fact, a set of facts in which he was involved. And if that party knows or should have known the only reason he was not sued was due to a mistake on the plaintiff's part. And if the notice of the lawsuit is sufficient that the party has not been prejudiced in his ability to later defend himself on the suit on the merits, that party is hard pressed to claim unfair treatment when the plaintiff later discovers the mistake and Susan, if was lucky to have avoided the suit when it was originally filed. And I think that line of thinking sort of explains the purpose of the relation back doctrine, which is that if the, and why the focus on the defendant's knowledge is so important here is because it strikes fairness in terms of not having a, or I'm sorry, in allowing the case proceed on the merits provided that it's fair to the defendant and should have known that he or she, or it in this case should have been sued. And so I think that the inability to assess the time period under one Oh three B, which I understand is provided for in the language of the statute, it's closely linked to the prejudice aspect of it. And so construing all of the facts in the light, most favorable to the non-movement being my client here. I think that there is at least a question of fact as to whether or not the notice was and the way that the case law has been interpreted. Thank you. As far as Jessica's testimony regarding the notice, as I mentioned before, sorry, I lost my track here. KWS acknowledges that there was this testimony, the trial court erred in overlooking it. But while KWS acknowledges in its response, it tries to get around it by pointing to the conflicting testimony in that second deposition. However, the testimony she gave in the first deposition is a judicial admission that she cannot later contradict with their own subsequent conflicting testimony. And while statements made during a discovery deposition are ordinarily treated as evidentiary admissions that may be controverted or explained when a party's testimony to a fact within her personal knowledge is sufficiently deliberate and unequivocal, it may be elevated to the status of a judicial admission. That's precisely what we have here. Whether she personally notified KWS is within her own personal knowledge and her answers were clear and concise and unqualified. And to be clear, this is the only testimony that Blackburn and Green is arguing constitutes a judicial admission. There were some suggestions in KWS's response that it might have pertained to when and where she was served with process. Blackburn and Green does not make that argument. And frankly, that's immaterial because where and when she was served doesn't matter. Jessica testified that she personally notified KWS of the commencement of this action. Why does it matter whether it's an admission? Isn't it just simply a fact, a material fact that's contested? This business about whether it's an admission doesn't seem to be relevant. Well, it is at the very least a question of fact that is contested. And that's for the jury or the trier of fact to determine, not the court on a motion for summary judgment. Because I think the issue here is that she did give conflicting testimony later on. And so the argument we're making is that she should be bound by the initial testimony based on the nature of that. But even if it's not a judicial admission, as your honor pointed out, for that very reason, there is a conflicting question of fact. And it goes to the questions of fact and credibility, much like the testimony from her brother, Robert, who also gave conflicting testimony as to what conflicting as to Jessica's initial testimony as to when KWS received suit. It underscores the fact that we have questions of fact and credibility as to the notice here. And so at the very least, there's sufficient evidence to show that Jessica personally notified KWS of the commencement of the lawsuit. And that's where it turns to the other problems within 2616d2, which we kind of touched upon. Now, as outlined in the brief section, 2616d was amended to mirror the Federal Rules of Civil Procedure, specifically Rule 15c, which provides the federal version of the Relation of Fact Doctrine. As such, Illinois courts have routinely looked to federal cases for guidance in interpreting that. And that's when it goes back to the Krupski case, which stands for the proposition, and in 2010, that the Relation of Fact depends upon what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the complaint. And that's where the two-part inquiry comes into play, which is whether the defendant, the first being, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant. Here, KWS concedes in its response that that's not an issue here, whether it knew or should have known that but for a mistake is not an issue. As for the second inquiry, whether even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself. And I think it's important to note here that, again, KWS does not contest whether its ability to defend itself has been impaired or prejudiced. Instead, it relies upon what we had just touched upon earlier, whether or not received notice within the statutory time period. And to that point, I will note that the applicable time period cited in the response brief is incorrect insofar as the KWS relies upon old version of 15C and old case law to provide the, to stand for the proposition that the notice must be received within the limitations period. That's no longer the law. The Schiavone v. Fortune case that KWS cites to was decided in 1986. Five years later, 15C was amended specifically to abrogate that decision and allow for this extra time for service under the rules. And so, that, I see my time is up. Mr. Meyer, I see that your time is up. You'll have an opportunity on rebuttal. Thank you. Thank you. Mr. Graham. May it please the court and counsel, to address Justice Harris's comments here a second ago, there are a couple issues that need to be kind of emphasized. One is that, one that counsel was just referring to, Jessica was served. She was served three days after the expiration of the limitations period and about five weeks after the litigation, between four and five weeks after the litigation was commenced. She was served. The time under 103B elapsed when she was served. That was the time that was necessary to serve her. Now, the question under 216 of the Civil Practice Act, isn't whether she received notice of commencement of the lawsuit and passed the notice of the commencement of the lawsuit on to her, either employer or former employer, depending on what the circumstances were at the time. It's whether the defendant, in this instance, her employer, had knowledge, not just of the fact that there was a lawsuit filed, but that there was a lawsuit filed against an entity that shouldn't have been named defendant. But for that mistake, it would have been sued. Mr. Graham, may I ask you to clarify your comment? When we're looking at 616D, and specifically Section 2, where it's asking us to examine the time for service permitted under Supreme Court Rule 103B, that would be, and maybe I'm wrong with this, where to look at the, let's say Jessica testified in her deposition that she notified KWS the week after she was served with the complaint. So she was served on June the 24th of 2016. Let's say that she testified that she told KWS a week after that. Where to look at that date, one week after her service, to determine whether service on KWS at that time would have been considered timely. Is that accurate? That's accurate to a point. I mean, it's not what I thought you said previously made it seem that we're to examine her service. But it's service on the defendant that wasn't named in the original suit. Correct, Your Honor. And it goes beyond that. It's the notice to that new defendant that it would have been sued, but for the fact that the plaintiff made a mistake in the original filing. That's the notice that has to be conveyed. Otherwise, there's no reason for the new defendant to ever understand that it should have been a party to the case. Now, irrespective of when or under what circumstances Jessica received her notice of the commencement of the action, and irrespective of the fact that she told her brother at some point in time, again, either at the time she received it or six months later, a year later, whenever it was, irrespective of all that stuff. The question that comes into play isn't just the fact that she said, hey, I got sued. It's that something else happened in addition to that. And that is, I got sued and they sued Foresight. And I wasn't working for Foresight at the time I was working for you, such that then the defendant has knowledge right then. Oh, plaintiff made a mistake. They intended to sue me. Now, in this case, there is absolutely no evidence at all that that transpired. And I think that that's one of the operative things that comes to play in this case. You know, the plaintiff takes the position that a question of fact is raised by virtue of the fact that Jessica said one thing in a deposition and she said something else in an affidavit. The deposition was taken under some circumstances that would explain why she testified the way she did. The circumstances were that the plaintiff retained the return of summons and didn't provide that to her at the time the deposition was taken. It was not a matter of the court record at the time the deposition was taken. The counsel who was representing Jessica at the time didn't have that return of summons. He had just entered an appearance in the case when he was notified of it by his insurance company. Mr. Graham, can I interrupt you again? And I'm sorry, bookmark where you're at in your argument. But it's a very important point that you're making, I think, in regards to the fact that Jessica didn't testify at her deposition that her previous employer had been sued in the original complaint. So then how would the fact that just Jessica, indicating she had been sued, be of any benefit or somehow put on notice, KWS? So taking that point and going back to 616D, where in that analysis does that become a point or of relevance? Is it the prejudice aspect that not being apprised that the former employer had been sued in the original suit then prejudices KWS? Well, I think that by itself is the nature of 2616 and the reason why they wrote it the way they did. But, you know, we're given specific language in the statute and where in that statute should we take into account the point you just made about KWS not having been informed that Jessica's former employer had been sued? I believe I don't have 2616 directly in front of me right now, but I believe that 2616 says that it's such that the defendant would know that but for the mistake in suing the wrong defendant, it would have been sued. And I'm sure I can. The language says, and knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him or her. It's that language that you're saying that ties in with this point that Jessica didn't inform anybody at her deposition that her former employer had been sued. That's correct, Your Honor. My testimony, excuse me, the testimony that she gave about the issue was limited by virtue of the fact that it's her memory was limited at the time. Um, I sat through her with a deposition and I know how she reacts to these things. So it wasn't surprising to me when you read the deposition and you see the description of how she, how she recalls having received the notice that the lawsuit against her had been initiated. And when she says she received a phone call that she was being sued, not a phone call. I was informed. I can't remember. It's so long ago that I was informed of it. I can't remember exactly how maybe in the mail. I don't remember. Mr. Graham, Mr. Graham, let me, let me jump in. Therein lies the problems. All the information is contained within the knowledge of Jessica and KWS. So, you know, we've got some credibility issues here. When you have testimony like that, you've got essentially the sister of KWS moving around for service. We don't know who was employing her and when she was employed, where, um, it seems to me we would have a, uh, question of fact, whether or not we have the actual time in which she told KWS of this suit. Uh, there's certainly some questions and those questions are brought to bear by some of the inconsistencies in the testimony. Would you not agree or like to comment on that? Well, and as Justice Thomas indicated a few minutes ago, that's on, that's on the plaintiff to bring that up. It's on the plaintiff to prove those issues that, that, that two, six, 16 ought to relate back in the reasons why two, six, 16 ought to relate back. The facts in this case were really pretty undisputed. Um, she may have, Jessica may have been Robert Wells' sister and Robert Wells was the only, uh, agent or representative of KWS, Kenneth Wells and Sons, Family Farming Corporation. But the two of them did not communicate. Uh, and the record in this case is replete with indications that there was no communication back and forth about anything between Robert Wells and Jessica Wells. When Jessica indicates that she told Robert about the accident and she, the same thing Robert testifies about the same thing. It was just that she told him there was an accident and that was it. There was never any discussion about it anymore. After that, she was insured by her own insurance company. She didn't see any reason to discuss it any further. Can I understand Justices Harris, uh, reminds us of the burdens, however, where there's credibility issues with regard to inconsistent, not inconsistent, but conflicting testimony at two separate depositions by this young woman that in and of itself, uh, raises a might or might not be, and it could be a question of fact. There wasn't conflicting testimony in the two depositions, Your Honor. She testified in both depositions that she believed she received the summons and complaint while she was living in Clark County, Illinois. And while she was working for her brother, she testified that way. As I started to say a few minutes ago for a couple of reasons that I think are evident in the record. One of them is she didn't have anything that would have assisted her in remembering exactly what it was. And we know as a matter of fact, we know as a matter of law that she was served in Rock Island County. When did she move from the KWS housing? She, depending on who, whose testimony you listened to, her testimony was she moved there more than a year, um, before the lawsuit was filed. Um, Robert Wells testimony was that she had moved from there at approximately the same time that the lawsuit was filed. Like the same day, I think, I think he used the same day. I think he said May 24th. Isn't that a relevant question of fact that she moved from the residence at a particular time? It is a relevant question. In fact, that's circumstantial to the knowledge of KWS. Well, except that Jessica Wells didn't have knowledge of the commencement of the lawsuit at the time that the lawsuit was filed. She only had knowledge of the commencement of the lawsuit a month later, and that was on the day she was served three days after the expiration of the statute of limitations. So again, isn't that real? Isn't that a relevant, genuine issue of material fact that relates to notice? It is, but there's no dispute about it. She lived in, at the time she was that this, at the time that she was served and at the time she first had notice of the existence of a lawsuit against her, she was living in Rock Island County, Illinois, and she wasn't working for Kenneth Wells and Sons Family Farm Corporation. But Robert, who is KWS, said she moved the same day as the filing of the lawsuit. Correct. Filing of the lawsuit. Well, that wasn't his words. His words were that he gave a date. He said she moved on June or yeah, May 21st or May 24th, 26th of that year. He didn't say she moved the same day the lawsuit was filed because frankly, he did not know the lawsuit had been filed. Right. It just coincidentally, he names the date that happens to be the date that the lawsuit was filed. Correct. It was a complete coincidence. Okay. And the fact of the matter was she was served then in Rock Island County, which tells us that she was not, when she first received notice of the fact that the lawsuit had been commenced, she was not working for KWS. But there were efforts at service in Clark County on or about the same day the lawsuit was filed, weren't there? My recollection of the return... I may be wrong. It's not that it was the day the lawsuit was filed. It was the day the statute of limitations expired. Okay. And there was, by my recollection, and we'll have to go back and look at the return again, but my recollection is that the process server attempted to serve it on the 24th of June in Clark County, was advised that the defendant, Jessica, had moved to Rock Island County at the time and that she was served the same day in Rock Island County. Okay. Now, when we say that she was served, that's a little bit of a stretch. And I think that's the other reason why her testimony about how she got knowledge that she was being sued is subject to some pretty significant question. And that's that she wasn't served personally. Her, the return of service says that her fiance's father received the service at his residence in Rock Island. And there is no evidence of record that indicates that a certified copy of the summons and complaint were then mailed to Jessica at her last known address. So when Jessica says, I don't know how I got sued. Well, she doesn't know how she got sued. It ended up in her lap and she turned it over to somebody after that. At some point in time after that fact, she may have had a discussion with her brother to say, Hey, I got sued. But there isn't any evidence in this case at all to indicate that what she told her brother was, Hey, I got sued. And oh, by the way, they sued Forsyth family farms. And I wasn't working for Forsyth at the time. They would, they should have sued you. If, change the facts just a little bit. If what had happened instead of that was that when she received the suit paper, she picked up the phone and she called her brother and she said, Hey, I just got sued. Forsyth got sued. I wasn't working for Forsyth. You know, you ought to pay attention to this. Different discussion. Uh, what is that? Certainly that's certainly from, sorry, justice Harris. I was just going to ask is KWS claiming prejudice, uh, uh, here in terms of, uh, plaintiff's, uh, uh, uh, attempt to utilize the relation back doctrine. And if so, what, what is the prejudice? Well, the accident that took place here that generated all this litigation occurs now three years before we ever even get notice of the fact that we're a party in the litigation. Now, I don't know what all information and documentation everybody may have accumulated and maintained and, and exchanged between everybody before KWS gets involved. But Kenneth Wells and sons doesn't have the opportunity to identify what the proper positions of all the parties are at the time that it can first possibly be notified that there's litigation going on. Why not? They all knew she was bringing lunch. I mean, they knew what her status was and they knew what she was doing and they knew that this was part of her normal duties and functions, right? I mean, this wasn't something extraordinary. No, they knew she was bringing lunch and they knew that she didn't know. It's just a motorcycle hits their car. She pulls out in front of a motorcycle. It's not complicated. Well, and that isn't complicated at all. The question that's complicated, or I don't think it's complicated, but the question that's raised here is whether, not whether Kenneth Wells and sons was aware of the fact that she was involved in a car motorcycle accident on a day when she was supposed to be delivering lunch to the guys in the field. The question that's at issue here is did Kenneth Wells and sons ever become aware that somebody else was sued in its place such that it could have defended this case during the statute of limitations period. And the answer to that question is very clearly it's either no, it never received that notice or it is that the plaintiff has failed to provide any information or documentation to the court that evidences the fact that they did. That's the bottom line here. And Mr. Graham, going back to prejudice, I just want to clarify, is the only prejudice that's being claimed that KWS is coming in late in the game? Yes. Okay. Yes, essentially. Is there any assertion of lost or destroyed evidence, records that haven't been kept, anything like that? None that I'm aware of. Okay, thank you. None that I'm aware of. Let me ask you a simple question, regardless of the burdens with regard to the relation back doctrine. I don't want to shift the burden, but what should have KWS known, should have known, or could have known? So, for instance, use the fact that Jessica told them or said in the deposition that he took care of the car problems. What should the brother, the company, have known? Just exactly what we just discussed with Justice Garmon is that she was involved in a car accident in her car, that her insurance was going to cover it, and that if somebody else needed some assistance from KWS, KWS would probably provide it. But to the extent of the information that was exchanged at the time, it was only that she had been in an accident, it was in her car, and she had her own insurance coverage, she was going to take care of it. After that... You disagree that the, or have a different take on whether or not the deposition was inconsistent. But if there is credibility issues, there is inconsistencies about what came from the deposition from either KWS, the brother, or Jessica, is it appropriate for there to be a finding of summary judgment? In this case, Judge, there's two reasons why. The first of them is there isn't any inconsistency between the two depositions. If you want to call it an inconsistency, there's an inconsistency between the two depositions and the affidavit on which the summary judgment was based. The two depositions both say that she thought she was served while she was living in Clark County while she was working for her brother. She did not have the benefit of knowing what the circumstances actually were at the time, and we know as a matter of law, she wasn't served. She didn't obtain notice of the commencement of the action while she was living in Clark County. So now having that information, she says in an affidavit, I'm aware of what the facts and the circumstances are now, and I can tell you conclusively, I wasn't living in Clark County at the time. I was living in Rock Island County, and I wasn't working for my brother's family farming corporation. So whether they're... Do you want me to finish? Please go ahead and finish your sentence. Whether... Well, that's the one reason. The other reason is the trial judge didn't decide the issue on that point. The trial judge took a completely different and divergent course, and the trial judge's decision is actually broader than that consideration. The trial judge decided that Jessica wasn't somebody who could accept process anyway, and she owed no responsibility to the company to provide notice of the fact that she had been served. Now, that extends to the fact that she had been served and somebody else was who was improperly named. But on that basis, and because that decision is made irrespective of when she received notice, the trial judge's decision does support the grant of summary judgment. All right. Thank you, Mr. Graham. Mr. Meyer, rebuttal. You're on mute, Mr. Meyer. Hang of it one day. Just a few points. The council had mentioned that Robert and Jessica, the two of them, didn't communicate, and I think this is something important to note here because I think it does go to a lot of these issues in terms of knowing or should have known, because there is testimony that Robert himself visited the scene of the accident after it occurred, even though it was not a place you would normally go. There is the testimony that Justice Kavanaugh pointed out that Robert and KWS took care of the repairs for Jessica. Robert testified that he had examined Jessica's vehicle. And on top of the fact that, again, they were notified on the day of the accident of the incident itself, while this doesn't provide notice for commencement of the action, it does provide information that would allow them to know or should have known that the employee that was out running an errand got sued, you should know or should have known that you would have been named if not for a mistake. And there's also been a lot of discussion about the testimony and what she knows and what she didn't know. She doesn't know how she got sued. Jessica doesn't know how or when she was served or it changes and how she first learned of the lawsuit. I think there's testimony that someone called her and told her about this. What she does know is what she testified to on May 12, 2017, is that she personally notified KWS of the lawsuit. And so the discussion in terms of whether or not there was communication between them and whether or not KWS knew or should have known or was prejudiced, the facts and circumstances here show that they had ample opportunity to investigate this and did in fact investigate it, were not prejudiced by anything, by the delay rather in finding this, and that they knew or should have known that when their employee was sued while running an errand, they would be sued if not for a mistake. And based on all of this, I think there's sufficient evidence in the record to at least create a question of material fact as to whether or not the requirements of 216 D2 are met. That is whether or not KWS received timely notice of the commencement of the action so that it was not prejudiced and if it knew or should have known that it would have been sued but for a mistake. And for these reasons, we would ask that this court reverse the trial court's judgment of entering summary judgment in favor of KWS. All right. Seeing no other questions. Thank you, Mr. Meyer. Thank you, counsel. The court will take this matter under advisement. We stand in recess.